WILLIAM J. PATERSON, Plaintiff-Appellee, *v.* THE CITY OF GRANITE CITY, Defendant-Appellant.

Fifth District   No. 79-255

Opinion filed November 16, 1979.

Irvin Slate, Jr., of Granite City, for appellant.

.   Talbert & Reeves, P.C., of Alton, for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

This is an appeal by the city of Granite City from a judgment of the circuit court of Madison County entered in favor of plaintiff William Paterson, a retired fireman, directing the city to pay him certain amounts declared due under a municipal ordinance. The sole issue involved is the validity of a municipal ordinance enacted in 1964, prior to home-rule powers in Illinois, which purported to require the defendant city to pay disabled municipal employees the difference between their normal wages and the amount available under the State disability statutes.

Paterson was retired from the Granite City Fire Department in 1970 after 11 years of service due to a work-related injury. The Granite City Firemen's Pension Board awarded him a 65% service-connected disability pension pursuant to the Firemen's Pension Code of the State of Illinois in effect at that time. (Ill. Rev. Stat. 1969, ch. 108½, par. 4—110.) There was at this time a municipal ordinance in effect in Granite City, entitled "Sick Leave Agreement," which contained a number of provisions relating to accrual payments and conditions of sick leave, funeral leave, and

maternity leave for municipal employees. The portion of the ordinance with which we are concerned is section 3, which reads as follows:

"3. An employee who is injured during and in the course of his employment with the City and receives either workmen's compensation or disability shall receive from the City the difference between the compensation or disability payment and his regular salary or wages. In no case shall an employee be entitled to more than his basic salary or wage while on sick leave." (Granite City, Illinois, Ordinance No. 2204 (1964).)

Section 3 of the ordinance was expressly repealed by the city council of Granite City in 1972.

In 1977 Paterson requested full salary benefits and back pay from the city council pursuant to Ordinance No. 2204. His request was denied without explanation. Thereafter Paterson instituted suit for recovery of the alleged back wages and the difference between his pension payments and regular salary. The circuit court ordered the city to pay approximately $29,600 in back wages and $293 per month until further order of the court.

The city's contention on appeal is that those portions of Ordinance No. 2204 purporting to authorize additional pension benefits are invalid, having been adopted without express authority of the legislature and prior to home rule when municipal governments were given broad powers to regulate their own affairs. Plaintiff, on the other hand, contends that the "benefits" conferred by the ordinance are merely incidents of employment which the city was impliedly authorized to set as part of its express grant of authority to operate fire stations. Plaintiff refers to the benefits under section 3 of the ordinance as "sick pay" while defendant characterizes them as "lifetime pension payments." This is more than a mere semantical distinction, as the outcome of this case is determined by the nature of the benefits conferred. For the reasons which will be set forth below, we believe that section 3 of Ordinance 2204 does attempt to confer a benefit in the form of a lifetime pension and that such a payment was not authorized by the General Assembly, either expressly or impliedly, when the ordinance was adopted.

To resolve the main issue before us, *i.e.*, the validity of Granite City Ordinance No. 2204, several other questions must be answered at the outset. We must first determine whether this particular benefit is a pension. Then we must determine what type of municipal authority is necessary to provide this type of benefit, and whether the city of Granite City was so empowered in 1964.

■■ A pension has been defined as a State allowance paid out of the public treasury to individuals or their representatives based upon valuable or meritorious services rendered or the satisfaction of certain

conditions, such as age, term of service, or loss or damages sustained while in public service. (*City of Duncan v. Bingham* (Okla. 1964), 394 P.2d 456, 460; *Murrell v. Elder-Beerman Stores Corp.* (C.P. 1968), 16 Ohio Misc. 1, 239 N.E.2d 248, 254.) It is conferred upon severance from service, and for that reason, it has been held that suspension or reduction of benefits is in order when the pensioner re-enters public service or receives income from other sources. (*People ex rel. Luthardt v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1934), 273 Ill. App. 387; *Berry v. City of Portsmouth* (4th Cir. 1977), 562 F.2d 307; *Board of Trustees v. People ex rel. Behrman* (1949), 119 Col. 301, 203 P.2d 490.) While a pension is a bounty springing from the graciousness and appreciation of the sovereign, the primary object of which is to induce efficient, conscientious and honorable service, such benefits may be given, withheld, distributed or recalled at its pleasure. *People ex rel. Judges Retirement System v. Wright* (1942), 379 Ill. 328, 332-33; *Miner v. Stafford* (1925), 239 Ill. App. 346, 350; *Hozer v. State of New Jersey Department of Treasury* (1967), 95 N.J. Super. 196, 199, 230 A.2d 508, 510.

■■ Plaintiff contends that section 3 of Ordinance No. 2204 is not a pension provision but an independent ordinance granting additional benefits to one already receiving a pension. Certainly the benefit is additional, but any suggestion that it does not constitute a pension is form over substance. The practical effect of section 3 is to grant a former employee a lifetime pay differential of 35% of his salary because he became disabled while on the job. To confer such a benefit under these circumstances is in accordance with the general characteristics of a pension as set forth above: the generous allowance to a once able employee who becomes disabled in the line of duty in order to reward past valuable services and to insure such employment by others in the future. Plaintiff seems to acknowledge such a conclusion by arguing that the funding authority for this additional payment is found in the present firemen's pension fund act. He contends that these are nonpension benefits constituting "unfunded accrued liabilities" or "benefits in force" under section 4—118. However, this section addresses the continuing municipal responsibility for pension liabilities under the previous firemen's pension statutes which were amended by this provision (Ill. Rev. Stat. 1977, ch. 108½, par. 4—118), and not the financing of any new and independent payment plan such as the one under review here. In other words, he is attempting to justify the awarding of what he says is not a pension under the pension statute. Contrary to the label plaintiff assigns to this benefit, it is, in all practical terms, a pension.

■■■ Having determined that section 3 of Ordinance 2204 does purport to grant a benefit in the form of an additional pension or pension supplement to the municipal employees of Granite City, we now must review

the nature of the requisite municipal authority needed to establish such a benefit. We are dealing with the pre-home-rule powers of a municipality since home rule did not come into being in Illinois until 1971, the effective date of the home-rule provision of the 1970 Illinois Constitution. (Ill. Const. 1970, art. VII, §6.) Prior to home rule, the power of a municipal corporation to pass ordinances depended upon express delegations of authority over the particular subject matter by the General Assembly. (*Arnold v. City of Chicago* (1944), 387 Ill. 532, 536; *City of Bloomington v. Wirrick* (1942), 381 Ill. 347, 352, *cert. denied* (1943), 319 U.S. 756, 87 L. Ed. 1709, 63 S. Ct. 1175; *City of Chicago v. Barnett* (1949), 404 Ill. 136, 138; *People ex rel. Schuwerk v. Illinois Municipal Retirement Fund* (1955), 6 Ill. 2d 405, 409.) Powers of a municipal corporation were derived by it from the General Assembly as it had no inherent powers. Legislation by a municipal corporation was valid only when authorized by statute, and statutes granting power to a municipal corporation were construed strictly against the municipality which claimed the right to exercise the power. (*City of Chicago Heights v. Western Union Telegraph Co.* (1950), 406 Ill. 428; *Ross v. City of Geneva* (1978), 71 Ill. 2d 27, 373 N.E.2d 1342.) Powers necessarily implied or incidental to express grants of authority had to meet a strict test of "necessity," not mere "convenience." (*City of Marion v. Criolo* (1917), 278 Ill. 159, 162; *City of Mt. Vernon v. Julian* (1938), 369 Ill. 447, 449; *People ex rel. Lapice v. Wolper* (1932), 350 Ill. 461, 465.) Such necessity envisioned that the exercise of the power was essential to the attainment of the declared objects and purposes of the municipal corporation. *City of Marengo v. Rowland* (1914), 263 Ill. 531; *City of Marion v. Criolo* (1917), 278 Ill. 159, 162.

■ Plaintiff argues that Granite City's authority to adopt by ordinance a "sick leave agreement" for the benefit of its municipal employees emanated incidentally and impliedly from its express grants of authority to provide and operate fire stations (Ill. Rev. Stat. 1963, ch. 24, par. 11—6—1), to employ firemen (Ill. Rev. Stat. 1963, ch. 24, par. 10—2—4), to set the hours, wages and working conditions of firemen (Ill. Rev. Stat. 1963, ch. 24, pars. 10—3—2, 10—3—3), and to provide for the relationship between municipal officers, employees and the people (Ill. Rev. Stat. 1963, ch. 24, par. 10—4—1). We do not dispute this contention with respect to those portions of Ordinance No. 2204 dealing with missed work due to illness, death or pregnancy. Plaintiff correctly states that these are all commonplace events in the normal course of employment and that a municipality impliedly possesses the authority to regulate and establish an organized program for dealing with them.

■ However, while a pre-home-rule municipality may possess incidental or implied authority to provide for maternity and sick pay for its employees, it does not follow that such a municipality has incidental or

implied powers to establish employee pension programs. There clearly was no express grant of authority from the legislature to Granite City to establish an additional pension or retirement benefit system for municipal employees, over and above that provided by statute, and the plaintiff has not so argued. (See Ill. Rev. Stat. 1963, ch. 108½, pars. 4—101 to 4—141.) Our research reveals no Illinois case dealing with the precise issue at hand: the nature of the authority needed by a municipality to independently establish and fund an employee pension program. Nevertheless, the presumption against implied and incidental local authority which prevailed in the pre-home-rule era, as well as both the legislative history of the Pension Code and the case law generated by it, convinces us that the city of Granite City did not impliedly possess the authority to provide the pension benefit which section 3 of Ordinance No. 2204 in effect confers. Nor was such authority incidental to the express grant of power to establish fire stations and working conditions for firemen since the State-sponsored program obviated the "need" for post-employment annuities.

▪ Prior to the 1970 Illinois Constitution, municipal governments had no independent authority to levy taxes. The power to levy had to come from the legislature and was entirely discretionary with it. The status of local governments in regard to taxation was made quite clear by the Illinois Supreme Court in the early case of *People ex rel. Gish v. Lake Erie & Western R.R. Co.* (1910), 248 Ill. 32:

> "Municipal corporations and local governmental subdivisons of the State have no inherent power to levy taxes. (*Commissioners of Highways v. Newell*, 80 Ill. 587.) That power is inherent in the legislature and absolute except as restrained by the constitution, (*City of Bloomington v. Latham*, 142 Ill. 462,) and if any grant of power to tax is made by the legislature to municipal corporations or local authorities, they must be able to show their warrant for the exercise of the power in the words of the grant, which are to be strictly construed. The reasonable presumption is that the State has granted, in clear and unmistakable terms, all it has intended to grant at all. (Cooley on Taxation, 209.)" (248 Ill. 32, 34.)

Subsequent cases have affirmed the principle that the legislature is the taxing authority though not the taxing instrumentality of the State. (*Sommers v. Patton* (1948), 399 Ill. 540, 544-45.) This narrow construction of taxing authority is in marked contrast to that of post-home-rule municipalities, upon whom a broad grant of power to tax has been conferred. *City of Evanston v. County of Cook* (1972), 53 Ill. 2d 312, 316, 291 N.E.2d 823.

Defendant city correctly asserts that there were no statutes empowering it to tax its citizens in order to pay for this additional

pension. The statutes in effect at the time which authorized the city to pay pensions in the first place had a ceiling on the amount municipal governments could pay to retired employees. The firemen's pension fund act set the maximum benefit at 65% of the employee's regular salary. (Ill. Rev. Stat. 1963, ch. 108½, pars. 4—109, 4—110.) The policemen's pension fund act set a maximum benefit of 60% of the regular salary. (Ill. Rev. Stat. 1963, ch. 108½, par. 3—111.) The municipal retirement fund act, applicable to all municipal employees other than teachers, policemen and firemen, limited the maximum benefit of 50% of the employee's regular salary. Ill. Rev. Stat. 1963, ch. 108½, pars. 7—148, 7—152.

■■ The financing section of the firemen's pension fund act (Ill. Rev. Stat. 1963, ch. 108½, par. 4—118), cannot be read to authorize a tax in excess of the amount necessary to finance each municipality's fund. This would be extending the scope of the statute beyond "the plain import of the words used," thus rendering the additional tax illegal. (*People ex rel. Smith v. Wabash Ry. Co.* (1940), 374 Ill. 165, 173.) Nor can any of the money within the fund be applied to other uses. A municipality may not use or divert such resources for other than the special purposes for which they were collected. 56 Am. Jur. 2d *Municipal Corporations* §582 (1971).

■■ ■ While we do not look with favor upon a municipality trying to avoid its obligations by asserting the illegality of its actions, the attempted exercise of authority in this case was clearly invalid. Section 3 of Granite City Ordinance No. 2204 was enacted without statutory authority, either express or implied, and therefore is void. (*City of Chicago Heights v. Western Union Telegraph Co.* (1950), 406 Ill. 428, 434-35.) An invalid ordinance creates no rights or obligations because the governmental unit is incapable of complying with it. (*City of Ottawa v. Hulse* (1928), 332 Ill. 286, 293.) Consequently, purported beneficiaries of any such enactment can acquire no interests therein. Accordingly, the judgment of the circuit court of Madison County is reversed.

Judgment reversed.

JONES, P. J., and KARNS, J., concur.