THE BOARD OF TRUSTEES OF THE VILLAGE OF ROSEMONT, COOK COUNTY *et al.*, Plaintiffs-Appellants, *v.* RICHARD L. MATHIAS *et al.*, Defendants-Appellees.

First District (5th Division)   No. 81—2276

Opinion filed October 15, 1982.

Ronald M. Glink and Peter M. Rosenthal, both of Ancel, Glink, Diamond, Murphy & Cope, P. C., of Chicago, for appellants.

Tyrone C. Fahner, Attorney General, of Springfield (Edward M. Kay, Assistant Attorney General, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

The board of trustees of the village of Rosemont filed a declaratory judgment action seeking, among other things, a declaration that the Director of the Department of Insurance erred in ordering the board to establish a firemen's pension fund under article 4 of the Illinois Pension Code (Ill. Rev. Stat. 1975, ch. 108½, par. 4—101 *et seq.*).

A bench trial was held, and the court (a) entered judgment in favor of the Director, and (b) ordered the Rosemont board to establish an article 4 firemen's pension fund. We reverse and remand for the reasons set forth below. But first, a brief statement of the material

facts will aid in understanding the legal issues presented by the Board's appeal.

On April 1, 1975, the village of Rosemont—a home rule unit of government under article 7, section 6(a) of the 1970 Illinois Constitution—held a referendum in which the municipal electorate exercised its statutorily granted authority to adopt articles 3 and 4 of the Pension Code. (See Ill. Rev. Stat. 1975, ch. 108½, pars. 3—145, 4—141.) By virtue of section 4—101 of article 4, a "municipality as defined in Section 4—103" is required to establish a pension fund for the benefit of "firemen as defined in Section 4—106." Article 3, in contrast, pertains to police pension funds. Ill. Rev. Stat. 1975, ch. 108½, par. 3—101.

On April 5, 1975—four days after the village voters adopted article 4—the Rosemont board of trustees enacted an ordinance which stated that it was abolishing the Rosemont fire department and transferring the employees of the abolished department to the Fire Section of a newly created Rosemont Public Safety Service. (Rosemont Ordinance 75—4—5A.) This was followed by an ordinance enacted on September 17, 1975, in which the board of trustees created a unified Public Safety Department consisting of all the Rosemont police officers, the employees of the abolished fire department, and the village's other public safety employees. (Rosemont Ordinance 75—9—17.) The new department includes detective, patrol, fire suppression, and paramedic sections, and all the department's employees are designated as public safety officers. (Rosemont Ordinance 75—9—17.) The September 17 ordinance expressly contemplates that each of the public safety officers will "serve several public safety functions." So, for example, the ordinance gives the new department the power to transfer public safety officers from one section to another, and all the department employees are given the job duties of enforcing the law (including making arrests) and extinguishing fires.

Under an amendment to article 4, effective October 1, 1975, the General Assembly (a) precluded home rule units of government from altering or amending the provisions of article 4 of the Pension Code, and (b) provided that a home rule unit which constitutes a "municipality, as defined in Section 4—103" of the Pension Code, is prohibited from providing a pension program for "firemen" other than through a fund which complies with the provisions of article 4. "An Act to add Sections 3—150 and 4—142 to the 'Illinois Pension Code' ***," Pub. Act 79—988 (codified, in pertinent part, at Ill. Rev. Stat. 1975, ch. 108½, par. 4—142).

The Rosemont board of trustees eventually established a police

pension fund under article 3 of the Pension Code. This fund covers all the employees of the Public Safety Department, and the board has not established a separate firemen's pension fund under article 4.

The Director of the Department of Insurance appointed a hearing officer to determine whether Rosemont violated the provisions of the Pension Code. The hearing officer concluded that the Rosemont board of trustees was obligated to establish both a police officer's pension fund and a firemen's pension fund because, by referendum, Rosemont had adopted both articles 3 and 4 of the Pension Code. The Director of the Department of Insurance followed the hearing officer's recommendation and ordered the board of trustees to establish an article 4 pension fund in addition to the already established article 3 fund. See Ill. Rev. Stat. 1977, ch. 108½, par. 22—509.

In response, the board of trustees filed a declaratory judgment action which challenged the Director's order on the grounds that the board's home rule powers under the 1970 Constitution (Ill. Const. 1970, art. 7, sec. 6(a)) empowered it to supersede the pension law which had been adopted by referendum. The board also argued that the Director did not have authority to appoint a hearing officer to conduct a hearing on whether it had violated the provisions of the Pension Code.

The trial court viewed the controlling issue as being whether the board of trustees unlawfully thwarted the results of the April 1, 1975, municipal referendum. And, despite the fact that Rosemont is a home rule unit of local government, the trial court concluded that the board of trustees unlawfully defeated the will of its electorate by attempting to avoid application of a law which was adopted by municipal referendum.

OPINION

Before the enactment of the 1970 Illinois Constitution, the powers of units of local government were limited to what was specifically authorized by the General Assembly or the 1870 Constitution. (Ill. Ann. Stat., 1970 Const., art. 7, sec. 6, Constitutional Commentary, at 22 (Smith-Hurd 1971).) The 1970 Illinois Constitution "drastically alter[ed] the relationship which previously existed between local and State government" (Kanellos v. County of Cook (1972), 53 Ill. 2d 161, 166, 290 N.E.2d 240, 243) by providing that "[e]xcept as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs ***." Ill. Const. 1970, art. 7, sec. 6(a).

In matters concerning their government and affairs, "Home rule

units *** have the same powers as the sovereign except where such powers are limited by the General Assembly" (*City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 273, 367 N.E.2d 692, 694) or by section 6 itself (*e.g.*, Ill. Const. 1970, art. 7, secs. 6(d), (e)). Accordingly, an ordinance enacted by a home rule unit supersedes a conflicting statute which was enacted before the effective date of the 1970 Constitution. (*County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, 513, 389 N.E.2d 553, 559; *Paglini v. Police Board* (1975), 61 Ill. 2d 233, 235, 335 N.E.2d 480, 482.) Furthermore, a statute enacted after the effective date of the 1970 Constitution does not restrict the home rule power unless it falls within one of the article 7, section 6 preemption provisions. See, *e.g.*, Ill. Const. 1970, art. 7, secs. 6(g), (h), and (i); see also *Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 528, 343 N.E.2d 919, 923 ("A statute intended to limit or deny home rule powers must contain an express statement to that effect").

In the present case, the board of trustees argues that the municipal referendum which adopted article 4 of the Pension Code was superseded by the inconsistent home rule ordinances which it enacted after the April 1975 referendum, but before October 1, 1975, when Public Act 79—988 (codified, in pertinent part, at Ill. Rev. Stat. 1975, ch. 108½, par. 4—142) became effective.

The Rosemont board does not dispute that this amendatory law prospectively preempted its home rule powers. The initial question, therefore, is whether—before October 1, 1975—the board of trustees could use its home rule powers to supersede the referendum which adopted article 4 of the Pension Code. We note, preliminarily, that the Director of the Department of Insurance does not contend that the General Assembly preempted the board's home rule powers before October 1, 1975. And the Director does not assert that the legislature intended that section 4—142 should be retroactively applied. Furthermore, the Director does not dispute that municipal pensions concern the government and affairs of home rule units.

Instead, despite the fact that a majority of the Illinois citizens voting on the question ratified the 1970 Constitution—including the home rule provision—the Director claims that it would "abrogat[e] the very core of democracy—the electoral process" if the Rosemont board of trustees could "totally ignore and avoid the effect of a referendum" by subsequently passing an inconsistent ordinance. However, the only case cited by the Director in support of this argument, *Routt v. Barrett* (1947), 396 Ill. 322, 71 N.E.2d 660, is irrelevant because (1) it preceded the enactment of the home rule provision in the 1970 Constitution, and (2) it concerns a provision in the 1870 Constitution

which *expressly* provided that certain laws (concerning public debts) had to be enacted by referendum, and could not be repealed by the legislature. (Ill. Const. 1870, art. 4, sec. 18.) We further find that the Director misperceives the relationship between home rule ordinances and provisions which are adopted by local referendum.

When the legislature has authority to directly enact a particular law, but it nevertheless provides that the law may be adopted by referendum, then—in the absence of a conflicting constitutional provision—the law thereby adopted "is still the act of the legislature, and is subject to repeal or amendment by that body in the same way as any other statute." (*Waugh v. Glos* (1910), 246 Ill. 604, 607, 92 N.E. 974, 976; see also *Culver v. Waters* (1910), 248 Ill. 163, 168, 93 N.E. 747, 749 ("The fact that the original act was adopted by a vote of the people does not require that every amendment made by the legislature must also be submitted to the people for their approval").) Illinois, therefore, follows the general rule that:

> "In jurisdictions where the initiative and referendum procedures exist, measures adopted by those procedures have the same status as ordinary acts of the legislature except where the constitution accords them a special position in the legal hierarchy by exempting them from amendment or repeal except by means of special procedures. Therefore, the rules applicable to repeals pertain to laws conceived by the initiative process or formally executed by the referendum process and both kinds of laws can repeal other prior statutes, or be repealed by subsequent legislation." 1A A. Sutherland, Statutory Construction sec. 23.23, at 263 (4th ed. 1972); accord, Annot., *Power of Legislative Body to Amend, Repeal, or Abrogate Initiative or Referendum Measure* ***, 33 A.L.R. 2d 1118, 1121 (1954).

The referendum which is the subject of the present controversy was authorized by section 4—141 of the Illinois Pension Code, a law which was approved, and became effective, in 1963. (1963 Ill. Laws 2442.) Questions concerning legislative preemption of home rule powers "were totally foreign in the contemplation of legislation adopted prior to the 1970 constitution" (*Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166-67, 290 N.E.2d 240, 243-44), and the legislature could not have intended—in 1963—to preclude home rule units from exercising powers which did not exist until years later when the citizens of Illinois ratified the 1970 Constitution.

■ In light of Rosemont's home rule power to supersede inconsistent statutes which were not enacted under one of the preemption provisions of article 7, section 6, of the 1970 Constitution, it is clear

that the municipal referendum authorized by section 4—141 of the Pension Code resulted in a law which was (before October 1, 1975) on the same footing as any nonpreemptive statute enacted by the legislature. Therefore, prior to October 1, 1975, the effective date of Public Act 79—988 (codified, in pertinent part, at Ill. Rev. Stat. 1975, ch. 108½, par. 4—142), the Rosemont board of trustees could validly supersede the law which was previously adopted through the municipal referendum authorized by section 4—141.

The Director correctly points out, however, that in addition to prospectively preempting the power of home rule units to alter or amend the provisions of article 4 of the Pension Code, section 4—142 also provides that no "home rule unit which is a municipality, as defined in Section 4—103" shall provide pension benefits to firemen in any manner other than a fund which complies with the provisions of article 4. Thus, the Director contends that—as of its October 1, 1975, effective date—the second clause of section 4—142 required Rosemont to establish an article 4 firemen's pension fund.

The factual predicate for this conclusion, however, is the Director's assumption that when section 4—142 became effective on October 1, 1975, (1) Rosemont was "a municipality, as defined in Section 4—103" (Ill. Rev. Stat. 1975, ch. 108½, par. 4—142), and (2) that Rosemont continued to employ "firemen" as that term is defined in section 4—106.

The significance of these provisions in determining whether Rosemont must establish an article 4 pension fund becomes apparent upon careful examination of article 4.

Section 4—101 requires "each municipality as defined in Section 4—103" (Ill. Rev. Stat. 1975, ch. 108½, par. 4—101) to establish an article 4 firemen's pension fund. But the relevant clause of section 4—103 defines "municipality" as "[a]ny *** city, village, incorporated town or township of less than 5,000 inhabitants [*i.e.*, Rosemont] *having a full-time paid fire department* which adopts the provisions of this article pursuant to the provisions of Section 4—141." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 108½, par. 4—103.) Thus, for example, if Rosemont did not have a "fire department" on October 1, 1975, then neither sections 4—103 nor 4—142 would apply to the village or require it to establish an article 4 fund.

■ Furthermore, sections 4—142 and 4—101 deal with pensions for "firemen," and Rosemont asserts that by September 1975 it did not employ any "firemen" as that term is used in section 4—106. Relevant portions of section 4—106 define "fireman" as someone who is classified as a fireman by the municipal civil service commission (Ill.

Rev. Stat. 1975, ch. 108½, par. 4—106(b)) *or* anyone who has been "appointed to any full-time position in the fire department or service of such municipality." (Ill. Rev. Stat. 1975, ch. 108½, par. 4—106(c).) So, if Rosemont's public safety officers are not "firemen" within the statutory definition, then sections 4—142 and 4—101 would not require Rosemont to establish a firemen's pension fund.

The trial court in the present case did not reach these factual issues because it based its ruling on its conclusion concerning Rosemont's power to supersede laws adopted by referendum. We therefore must remand to the trial court so that it can address the questions raised by Rosemont's allegations that it did not have—within the meaning of the statutory definitions—a fire department or any firemen when the preemption statute became effective.

Finally, we note that the legislative debate on the bill which became section 4—142 shows that the purpose of preempting this area from the jurisdiction of home rule units was to insure that Illinois firemen would receive uniform pension benefits. It may well be that the provisions of article 4 do not apply to Rosemont's Public Safety Department and its alleged hybrid classification of police officer/firefighter. If that is the case, then only the legislature can act to insure uniformity in the pension benefits provided to such employees throughout the State.

For the preceding reasons, the judgment of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

MEJDA and WILSON, JJ., concur.