THE CITY OF DE KALB, Plaintiff-Appellant, v. INTERNATIONAL AS-SOCIATION OF FIRE FIGHTERS, LOCAL 1236, Defendant-Appellee.

Second District   No. 2—88—0743

Opinion filed May 5, 1989.

Richard L. Turner, Jr., of Sycamore, for appellant.

James R. Donnelly, of O'Malley & Donnelly, of De Kalb and Long, Rabin & Young, Ltd., of Springfield (Wayne M. Klocke, of counsel), for appellee.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, the City of De Kalb (De Kalb), a home rule unit, appeals

from an order dismissing its amended complaint in which De Kalb sought to vacate and set aside an arbitrator's award made to certain city firemen who were members of defendant, the International Association of Fire Fighters, Local 1236 (the Union). De Kalb contends that its complaint was erroneously dismissed because the arbitrator's award violated public policy as set forth in the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 1—101 *et seq.*) and should be vacated.

Plaintiff and defendant entered into a collective bargaining agreement in July 1980, which included the following provisions:

"ARTICLE XV. DISABILITY PAY

Section A. A member of the Fire Department who is incapacitated from injury in the course of his employment with the City shall be entitled to a maximum of six (6) calendar months leave on account of the disability with full pay if granted by the Police and Fire Commission according to Chapter 24, Section 10—2.1—23 of the Illinois Revised Statutes. This six (6) month period may be extended by the City Manager with the approval of the City Council.

Section B. A member who is receiving benefits under Workmen's Compensation Act, Workmen's Occupational Disease Act, or Illinois Pension Code will be paid the difference between base pay and the aforementioned benefits for the applicable period of his disability."

Subsequent collective bargaining agreements entered between these parties contained the same provision. In 1982, fire fighter Charles Siebrasse was injured and commenced receiving 65% of his regular base pay as a fire fighter's disability pension awarded by the Board of Police and Fire Commission of the the City of De Kalb pursuant to section 4—110 of the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 4—110). An additional 35% of his base salary was also paid by De Kalb pursuant to the disability provision of article XV of the collective bargaining agreement. In February 1986, De Kalb discontinued paying the 35% differential pay provided for in the agreement after being advised by a representative of the State of Illinois Department of Insurance that the additional disability payments were contrary to the Illinois Pension Code. Fire fighter John Hiland became disabled on June 27, 1985, as a result of a heart attack and was awarded a disability pension. Hiland was denied differential pay under the agreement because he was receiving 65% of his pay from his disability pension pursuant to section 4—110.1 of the Pension Code.

In January 1987, De Kalb and the Union entered into a new col-

lective bargaining agreement in which the disability period contained in article XV, section A, of the disability pay provisions was increased from 6 to 12 months and the language in article XV, section B, providing for payment of differential pay above any disability pension was deleted. A separate agreement entered into between the parties provided that if an arbitrator or court ruled that article XV, section B, of the collective bargaining agreement was legal, then that provision would control instead of the revised section B.

The Union filed a grievance on behalf of these firemen, pursuant to the terms of the collective bargaining agreement, after De Kalb declined to pay them the difference between their regular base pay and their disability pensions. De Kalb denied the grievance and it was referred to an arbitrator. After a hearing held in May 1987, the arbitrator sustained the grievance and ordered the City to pay Siebrasse and Hiland the differential pay as provided for in the collective bargaining agreement at the time of their injuries. The current agreement also provided that the decisions of an arbitrator on matters submitted to arbitration were final and binding.

The City of De Kalb then filed a complaint in the circuit court to vacate the arbitration award alleging that "[t]his action is brought in the nature of a request for a review of a certain arbitration award *** pursuant to the provisions of Section 8 of the *Illinois Public Labor Relations Act, Ill. Rev. Stats.* 1985, Ch. 48, par. 1608; and Section 112 of the *Illinois Uniform Arbitration Act, Ill. Rev. Stats.* 1985, Ch. 10, Par. 112." (Emphasis in original.) An amendment to the complaint further alleged that the arbitrator's award was in direct contravention of Illinois public policy contained in section 4—142 of the Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 4—142), which prohibited a home rule municipality from providing an annuity benefit to a fire fighter other than as provided in the Illinois Pension Code. The Union filed a combined motion to dismiss pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—619) in which it alleged that the trial court did not have subject-matter jurisdiction to review the arbitrator's award; that De Kalb's complaint did not set forth any basis which would render the arbitrator's decision unlawful; that De Kalb waived any objection to the arbitrator's authority to decide the legality of the disputed compensation when it agreed to submit that issue to the arbitrator for a final and binding determination; and that De Kalb's complaint failed to set forth facts to establish that the arbitrator was without or exceeded his powers, or that the award was the result of partiality, or was procured by fraud, collusion or some other unlawful means, as is

required by section 12 of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 112).

The trial court granted the Union's motion to dismiss, stating only that doing so "will permit the Appellate Court to expeditiously consider the 'public policy' argument of Plaintiff." The judge did not specify on what legal or factual basis he granted the Union's motion to dismiss, whether the dismissal was pursuant to section 2—615 or section 2—619 of the Code of Civil Procedure or give any indication he had made any effort to consider the merits of the issues presented to the circuit court for its determination.

De Kalb appeals, and we note it has not complied with Supreme Court Rule 341(e)(4)(ii), which requires that an appellant's brief contain a statement of jurisdiction. (122 Ill. 2d R. 341(e)(4)(ii).) Failure to do so in the future will be at the risk of dismissal of an appeal.

De Kalb contends that the circuit court had proper subject-matter jurisdiction; that no other affirmative matter exists avoiding the legal effect of or defeating its claim under section 2—619; and that its complaint set forth sufficient facts and allegations to withstand a motion to dismiss under section 2—615 for failure to state a cause of action.

The Union asserts that the arbitrator's award is final, that the collective bargaining agreement between the parties prevails over any conflicting statute, and that the disputed payments directed to be made by article XV of the agreement are continuing compensation payments, not annuity benefits which are prohibited under section 4—142 of the Pension Code.

While De Kalb's complaint stated that review of the arbitrator's award was sought in the circuit court under section 8 of the Illinois Public Labor Relations Act (Ill. Rev Stat. 1985, ch. 48, par. 1608) (incorporates provisions of the Uniform Arbitration Act) and section 12 of the Uniform Arbitration Act (Ill. Rev. Stat. 1985, ch. 10, par. 112), an amendment to the complaint also alleged that the arbitrator's award was in direct contravention of public policy considerations contained in section 4—142 of the Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 4—142). Section 12 of the Uniform Arbitration Act provides that the provisions of that act for vacating, modifying, or correcting an arbitration award do not apply to awards "entered as a result of an arbitration agreement which is a part of or pursuant to a collective bargaining agreement; and the grounds for vacating, modifying, or correcting such an award shall be those which existed prior to the enactment of this Act." (Ill. Rev. Stat. 1985, ch. 10, par. 112(e).) A court must thus look to the common-law ground which existed prior to the enactment of the Uniform Arbitration Act when

considering vacating an arbitration award. *Board of Education v. Chicago Teachers Union, Local No. 1* (1981), 86 Ill. 2d 469, 474, 427 N.E.2d 1199.

■ It is well settled that an arbitration award may not stand if it contravenes paramount considerations of public policy. (*American Federation of State, County & Municipal Employees, AFL-CIO v. Illinois Department of Mental Health* (1988), 124 Ill. 2d 246, 260, 529 N.E.2d 534.) A court's refusal to enforce an arbitrator's award on public policy ground is an application of the general common-law principle that a court may decline to enforce contracts that violate law or public policy, a doctrine which is rooted in the notion that a court will not aid one that bases a cause of action upon an immoral or illegal act. (*United Paperworkers International Union, AFL-CIO v. Misco, Inc.* (1987), 484 U.S. 29, 42, 98 L. Ed. 2d 286, 301, 108 S. Ct. 364, 373.) As it seems clear that the circuit court could properly entertain De Kalb's complaint that the arbitrator's award should be vacated on public policy ground, in the interest of judicial economy we will address the arguments made in the trial court and in the parties' briefs on appeal whether the award in this case violates public policy of Illinois as set forth in the Pension Code.

■ Public policy has no precise definition, and there is no absolute rule by which to test a contract to determine whether or not it is contrary to public policy. (*Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600, AFT, AFL/CIO* (1979), 74 Ill. 2d 412, 425, 386 N.E.2d 47.) The public policy of the State can be found in its constitution and statutes and, when these are silent, in its judicial decisions. (*American Federation of State, County & Municipal Employees, AFL-CIO v. Department of Mental Health* (1988), 124 Ill. 2d 246, 260, 529 N.E.2d 534.) We conclude that the trial court erred in dismissing De Kalb's amended complaint to vacate the arbitrator's award as that award contravenes the public policy of Illinois as set forth in section 4—142 of the Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 4—142), which provides:

> "§4—142. Applicability of home rule powers. A home rule unit, as defined in Article VII of the 1970 Illinois Constitution or any amendment thereto, shall have no power to change, alter, or amend in any way the provisions of this Article. A home rule unit which is a municipality, as defined in Section 4—103, shall not provide for, singly or as a part of any plan or program, by any means whatsoever, any type of retirement or annuity benefit to a firefighter other than through establishment of a fund as provided in this Article as now or hereafter

amended." (Ill. Rev. Stat. 1985, ch. 108½, par. 4—142.)

Article 4 of the Pension Code specifically addresses a fire fighter's eligibility for a disability pension and the amount thereof and was enacted to insure that Illinois firemen would receive uniform pension benefits. (*Board of Trustees v. Mathias* (1982), 109 Ill. App. 3d 894, 900, 441 N.E.2d 362.) In considering section 3—150 of the Pension Code, which applies to police officers but is identical in all other respects to section 4—142 of the Pension Code, the appellate court has held "that the prohibited changes, alterations, or amendments referred to in the first clause of section 3—150 are the provision of any type of pension or annuity other than as established in article 3 of the Illinois Municipal Code [*sic*]." *Sanders v. City of Springfield* (1985), 130 Ill. App. 3d 490, 494, 474 N.E.2d 438.

■ To "alter" something includes a change which increases or diminishes it, and an "amendment" includes a change or modification for the better. (Black's Law Dictionary 71, 74 (5th ed. 1979).) Clearly, the additional payment by De Kalb of the difference between a fire fighter's regular pay and his disability pension would be a supplemental pension benefit, rather than "continuing compensation" as the Union urges (*cf. Paterson v. City of Granite City* (1979), 78 Ill. App. 3d 821, 824, 397 N.E.2d 237 (the difference between a retired fire fighter's compensation and disability pension paid pursuant to the city ordinance was an additional pension or pension supplement, contrary to the fire fighter's argument that these payments were sick pay)), and is expressly prohibited by section 4—142 of the Pension Code. The Union argues that *Paterson* does not apply because the court there was considering the pre–home-rule powers of a municipality; however, this distinction would not act to change the definition of the benefit conveyed or the prohibition of section 4—142.

The Union also argues that if section 4—142 of the Pension Code were interpreted to prohibit "differential pay," an irresolvable conflict would arise between that section and section 91 of "An Act to provide for the continuation of compensation for *** firemen who suffer disabling injury in the line of duty," which provides:

> "Whenever any *** fireman *** who is employed on a full time basis by *** any unit of local government *** suffers any injury in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by the employing public entity on the same basis as he was paid before the injury, with no deduction from his sick leave credits, compensatory time for overtime accumulations or vacation, or service credits in a public employee pension fund during the time he is unable

to perform his duties due to the result of the injury but not longer than one year in relation to the same injury \*\*\*.
            \*\*\*
            \*\*\* Any disabled person receiving compensation under the provisions of this Act shall not be entitled to any benefits for which he would qualify because of his disability under the provisions of the Illinois Pension Code \*\*\*.
            This Act does not apply to any home rule unit." (Ill. Rev. Stat. 1985, ch. 70, par. 91.)
The Union reasons that if "the continuing compensation under Article XV(B), is a 'retirement or annuity benefit,' then Chapter 108½, par. 4—142 would be in irresolvable conflict with Chapter 70, par. 91 because in the absence of the exercise of home rule powers, paragraph 91 would require payment of such compensation in the first year of disability while paragraph 4—142 would prohibit any such payment." The Union acknowledges, however, that during the period in question in this case, section 91 did not apply to home rule units, as is the City of De Kalb, and we will not consider it further. (This provision was subsequently amended to apply to home rule units with a population of 1 million or under. (Pub. Act 85—1393, eff. Sept. 2, 1988).)

            The Union also argues that section 15 of the Illinois Public Labor Relations Act (Labor Act) supersedes any application of other statutory provisions inconsistent with the Labor Act or a collective bargaining agreement entered into by a public sector employer and a union. The Union argues that, pursuant to the grievance procedure contained in section 8 of the Labor Act (Ill. Rev. Stat. 1985, ch. 48, par. 1608), the parties' intent is to be determined by an arbitrator and then, pursuant to section 15(a) of the Labor Act (Ill. Rev. Stat. 1985, ch. 48, par. 1615(a)), the terms of the collective bargaining agreement will control over any conflicting law adopted by the legislature. Sections 15(a) and (b) of the Labor Act provide:
            "§15. Act Takes Precedence. (a) In case of any conflict between the provisions of this Act and any other law, executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control. \*\*\*
            (b) \*\*\* [A]ny collective bargaining contract between a public employer and a labor organization executed pursuant to this Act shall supersede any contrary statutes, charters, ordinances, rules or regulations relating to wages, hours and conditions of employment and employment relations adopted by the public

employer or its agents. Any collective bargaining agreement entered into prior to the effective date of this Act [July 1, 1984] shall remain in full force during its duration." (Ill. Rev. Stat. 1985, ch. 48, pars. 1615(a), (b).)

The arbitrator apparently relied on section 15(b) of the Labor Act in making the award as his opinion states that "[t]he Arbitrator observes that the Act is explicit on its face. If there is a conflict between the law and a collective bargaining agreement relative to the matters listed in the Act, then the collective bargaining agreement takes precedence."

■ We do not consider this argument as the definition of a public employee under the Labor Act excluded non-State fire fighters employed by fire departments and fire protection districts at the time fire fighters Siebrasse and Hiland suffered their disabling injuries. (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1603(m).) While the Labor Act was subsequently amended to include non-State fire fighters, that amendment was not effective until January 1, 1986. (Ill. Rev. Stat. 1985, ch. 48, par. 1603(n).) Unless the amendatory act expressly declares otherwise, an amendment is generally construed as prospective in its operation (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390, 415 N.E.2d 1034), and the law to be applied is that which existed on the date of the injury. (*Kozmel v. Industrial Comm'n* (1982), 88 Ill. 2d 512, 513, 431 N.E.2d 373 (workers' compensation claim); *Sellards v. Board of Trustees of Rolling Meadows Firemen's Pension Fund* (1985), 133 Ill. App. 3d 415, 417, 478 N.E.2d 1123 (disability pension benefits).) As firemen Siebrasse and Hiland were both disabled prior to January 1, 1986, the Labor Act had no application to them in this case.

In oral argument before this court the Union conceded that sections 15(a) and (b) of the Labor Act did not apply when the causes of action in this case arose, but argued that the collective bargaining agreement would nevertheless supersede any inconsistent law because the Labor Act provides, "[n]othing in this Act shall interfere with or negate the current representation rights or patterns and practices of labor organizations which have historically represented public employees for the purpose of collective bargaining, including but not limited to the negotiations of wages, hours and working conditions." (Ill. Rev. Stat. 1985, ch. 48, par. 1609(c).) The Union, however, has not offered any reasoned argument or supporting case law which would permit this court to ignore the legislature's clear exclusion of non-State fire fighters from the Labor Act prior to January 1, 1986.

While we need not here decide whether, as the Union urges, a col-

lective bargaining agreement between a public employer and a labor organization supersedes any contrary law, our supreme court considered a similar argument in *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 522 N.E.2d 1219. In that case, the court construed section 7 of the Labor Act which, in relevant part, provides:

> "The duty 'to bargain collectively' shall also include an obligation to negotiate over any matter with respect to wages, hours and other conditions of employment, not specifically provided for in any other law or not specifically in violation of the provisions of any law. If any other law pertains, in part, to a matter affecting the wages, hours and other conditions of employment, such other law shall not be construed as limiting the duty 'to bargain collectively' and to enter into collective bargaining agreements containing clauses which either supplement, implement, or relate to the effect of such provisions in other laws." (Ill. Rev. Stat., 1984 Supp., ch. 48, par. 1607.)

The supreme court noted that "[t]he interpretation adopted by the State Board in this case suggests that the duty to bargain set out in section 7 invariably overrides any contrary statutory command. That reading \*\*\* effectively eliminates any potential conflict between another statute and the bargaining duty prescribed by the Act; under that interpretation, no statute would ever limit the duty to bargain. We do not agree that section 7 may be read so broadly." (*City of Decatur*, 122 Ill. 2d at 361-62.) The court also noted that section 7 of the Labor Act indicates that a bargaining duty may be limited by a law which provides for or prohibits a matter that would ordinarily be a mandatory subject of bargaining. *City of Decatur*, 122 Ill. 2d at 361-62.

The Union also argues that if De Kalb wished to preserve the issue of legality of the collective bargaining agreement for judicial review, it should not have submitted the issue to the arbitrator, citing *American Federation of State, County & Municipal Employees, AFL-CIO v. Department of Mental Health* (1988), 124 Ill. 2d 246, 529 N.E.2d 534. That case does not stand for the proposition that De Kalb waived its right to challenge in court that the disability pay provisions of article XV, section B, of the collective bargaining agreement violate public policy by submitting that issue to the arbitrator. *Cf. Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600, AFT, AFL/CIO* (1979), 74 Ill. 2d 412, 424, 386 N.E.2d 47 (even when an arbitrator has considered public policy issues in construing a collective bargaining agreement, a

court should not abdicate to the arbitrator the responsibility to protect the public interest at stake).

Accordingly, the order of the circuit court dismissing the amended complaint to vacate the arbitrator's award is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

UNVERZAGT, P.J., and WOODWARD, J., concur.