**CITY OF BLOOMINGTON, Respondent,**

v.

**LOCAL 2828 OF the AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES et al., Appellants.**

No. 49905.

Supreme Court of Minnesota.

Jan. 11, 1980.

Gregg M. Corwin, Golden Valley, for appellants.

Gary Gandrud, City Atty., and David R. Ornstein, Asst. City Atty., Bloomington, for respondent.

TODD, Justice.

Dale Rezac was employed as an appraiser by the city of Bloomington. The city discharged Rezac for acts alleged to constitute just cause. The union filed a grievance which resulted in the matter being submitted to arbitration. The arbitrator determined there was no just cause for discharge, but that there was just cause for discipline and fashioned a remedy. The trial court vacated the award on the grounds the arbitrator had exceeded his authority. We reverse.

Rezac's duties as a city appraiser involved inspections of real properties and completion of assessment records. The city discharged Rezac because he had allegedly falsified assessment records and improperly used a city vehicle furnished to him. Local 2828 of the American Federation of State, County, and Municipal Employees filed a grievance on behalf of Rezac pursuant to the terms of a collective bargaining contract existing between the union and the city. Following the exhaustion of grievance procedures, the union demanded arbitration as provided for in the contract. The city resisted arbitration by seeking a stay of arbitration in district court on the grounds that the request was not timely. The district court decided that the arbitration request was timely, and the city accepted this determination.

The city and the union agreed upon an arbitrator and submitted the case to him. Contrary to the requirements of the contract, no written submission of issues was made to the arbitrator. Both parties, however, agree that the arbitrator had jurisdiction to decide the issue of whether there was just cause to discharge Rezac. In his

opinion and award, the arbitrator formulated the issue as: "Was the Grievant, Dale N. [Rezac] discharged for just and proper cause? If not, what shall the appropriate remedy be?" The arbitrator then determined that Rezac had not been discharged for just cause although just cause did exist to impose a lesser discipline. Since Rezac had accepted other employment and did not request reinstatement, the arbitrator awarded Rezac backpay from the date of discharge to the date of the award "less a 60 day period which shall be considered a suspension," and less other appropriate deductions.

The award was appealed to the district court. The trial judge vacated the award on the grounds that the agreement limited the arbitrator's power to determining only whether just cause for some kind of discipline existed, leaving to the city the kind of discipline to be imposed. Thus, "[b]y concerning himself with the issue of whether a penalty other than discharge might be appropriate, the arbitrator clearly exceeded his authority and went beyond the sole issue of 'just cause for discharge.'" The Court, being satisfied that the arbitrator herein exceeded his power," vacated the award under the authority of *State v. Berthiaume*, 259 N.W.2d 904 (Minn.1977).

The union appealed, alleging that the actions of the district court involved a decision on the merits of the award and that under the facts of this case the arbitrator had jurisdiction to fashion an appropriate remedy.

1. The city and the union are parties to a collective bargaining agreement in conformity with the requirements of Minn. Stat. § 179.70, subd. 1 (1978). In pertinent part, this collective bargaining agreement provides:

### ARTICLE I—PURPOSE AND INTENT

It is the purpose of this Agreement to establish certain wages, hours, and conditions of employment and to establish procedures for the resolution of disputes concerning the interpretation or application of the Agreement. * * *

\* \* \* \* \* \*

### ARTICLE III—MANAGEMENT RIGHTS

The UNION recognizes the prerogative of the CITY to operate and manage its affairs in all respects in accordance with the laws and regulations of appropriate authorities, including personnel policies and work rules.

These management rights include, but are not limited to, the following:

A. To utilize personnel methods, procedures, and means in the most appropriate manner possible.

B. To manage and direct the employees of the Community Development Department, Staff Services Department, and the Police Department.

C. To hire, schedule, promote, transfer, assign, train or retrain employees in positions in the Community Development Department, Staff Services Department, and the Police Department.

D. To suspend, demote, discharge, or take other appropriate disciplinary action against the employees for just cause.

E. To determine the size and composition of the work force and to relieve employees from duties because of lack of work or other legitimate reasons.

F. To determine the mission of the City in the Community Development Department, Staff Services Department, and Police Department, and the method, means, job classifications, and personnel by which it is to be accomplished.

All management rights not specifically limited or abrogated by the terms and provisions of the Agreement remain vested solely and exclusively in the CITY.

### ARTICLE IV—SCOPE OF THE AGREEMENT

Section 1. Both parties acknowledge that during the negotiations which preceded this Agreement, each had the un-

limited right and opportunity to make demands and proposals with respect to any subject or matter and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. Therefore, for the life of this Agreement the CITY and the UNION each voluntarily and unqualifiedly waives the right and each agrees that the other shall not be obligated to negotiate collectively with respect to any subject or matter referred to, or covered in this Agreement, or with respect to any subject or matter not specifically referred to or covered in this Agreement.

\*　　\*　　\*　　\*　　\*　　\*

## ARTICLE VI—GRIEVANCE PROCEDURE

Section 1. For the purpose of this Agreement, the term "grievance" means any dispute between the CITY and the employee(s) concerning the interpretation, application, claim of breach, or violation of this Agreement. Both parties recognize that should a provision of this Agreement be in conflict with a Merit Rule, this Agreement shall prevail; any Merit Rule not directly modified or abridged by this Agreement shall remain in force.

\*　　\*　　\*　　.\*　　\*　　\*

Section 8. SIXTH STEP:

If both parties, having exhausted the grievance steps provided herein cannot settle the grievance, either party may submit the issue in dispute to binding arbitration and shall notify the other party, in writing, of its intent to do so. The arbitrator shall be a member of the American Arbitration Association National Panel of Labor Arbitrators. The party requesting arbitration will request the American Arbitration Association to submit a list of five names from which the parties shall select an arbitrator. The parties shall, within seven (7) working days after the receipt of such a list, select the arbitrator by striking alternately one name each, and the final name shall be the arbitrator. If the parties cannot de-

cide who shall strike the first name, the party entitled to strike the first name shall be determined by the toss of a coin.

Section 9. An arbitrator shall have no right to amend, modify, nullify, ignore, add to or subtract from the provisions of the Agreement. He shall consider and decide only the specific issues submitted to him in writing by the CITY and the UNION and shall have no authority to make a decision on any other issue not so submitted to him. The arbitrator shall be without power to make decisions contrary to, or inconsistent with, or modifying or varying in any way the application of laws, rules, or regulations having the force or effect of law. The arbitrator shall submit his decision in writing within thirty (30) days following the close of the hearing or the submission of briefs by the parties, whichever is later, unless the parties agree to an extension. The decision shall be based solely upon the arbitrator's interpretation or application of the expressed terms of this Agreement and on the facts of the grievance presented.

\*　　\*　　\*　　\*　　\*　　\*

Section 12. The parties recognize the authority of the CITY to suspend, demote, discharge or take other appropriate action against employees for just cause. An employee who alleges that such action was not based on just cause may appeal a demotion, suspension, discharge, or written reprimand taken by the CITY, beginning with the Third Step of the Grievance Procedure, except that written reprimands shall begin with the First Step of the Grievance Procedure.

Section 13. In the event that more than one procedure is available for resolution of a dispute arising from any provision(s) covered by this Agreement, the aggrieved employee(s) shall be limited to one procedure through which remedy may be sought. The aggrieved employee(s) shall indicate, in writing, which procedure is to be utilized and shall sign a statement to the effect that the choice of any one procedure precludes the aggriev-

ed employee(s) from making a subsequent appeal under any other procedure.

■ 2. The trial court read the arbitration agreement to reveal "that the sole issue to be determined by the arbitrator was whether or not the City had just cause to suspend, demote, discharge, or take other disciplinary action against Dale Rezac." We recognize that the parties could have worded the submission in this manner. They did not, however, and so the trial court's interpretation of the agreement placing these restrictions upon the arbitrator was outside the bounds of judicial review. By focusing upon the issue submitted for decision, namely, just cause for discharge, we are able to ascertain the proper role of the courts in reviewing the arbitrator's decision in this case.

Just cause for discharge is not defined in the agreement. If the agreement had defined falsification of records or unauthorized use of a vehicle as acts constituting just cause for discharge, the arbitrator's finding that Rezac had performed these acts would have terminated his function in this matter. Rezac would have been rightfully discharged. *Mistletoe Express Service v. Motor Expressmen's Union,* 566 F.2d 692, 695 (1977). By failing to specifically define what acts constitute just cause for discharge, however, the parties left this decision to the arbitrator. As we said in *State v. Berthiaume,* 259 N.W.2d at 910: " 'an arbitrator, in the absence of any agreement limiting his authority, is the final judge of both law and fact, including the interpretation of the terms of any contract.' " In his role as finder of fact and interpreter of the agreement, the arbitrator determined that Rezac performed the acts of which he was accused, but that these acts only provided just cause for disciplining Rezac, not discharging him.

■ The trial court, under its interpretation of the agreement, equated a finding of just cause for discipline with a finding of just cause for discharge. Rezac's actions provided just cause for discipline and they may have also provided just cause for discharge. This interpretation was not the trial court's to make, however, because questions of agreement interpretation rested with the arbitrator. The proper role of judicial review in arbitration cases is solely to determine whether specific language in the agreement or submission precludes the arbitrator from deciding the case as he did. "[C]ourts will not overturn an award merely because they may disagree with the arbitrators' decision on the merits." *Children's Hospital v. Minnesota Nurses Ass'n,* 265 N.W.2d 649, 652 (Minn.1978). There is no specific language precluding the arbitrator's decision in this case.

■ The city argued that the Civil Service Merit Plan adopted in Bloomington defined the acts of Rezac as just cause for discharge and that these terms were incorporated by reference into the agreement by Article VI, Section 1. We decline to accept this view. The Civil Service Merit Plan has an established method of reviewing discipline matters and is generally used to regulate relations with municipal employees not covered by a collective bargaining agreement. Apparently Rezac could have proceeded under the Merit Plan but elected to proceed under the collective bargaining procedures. Under Article VI, Section 13, of the agreement, Rezac was limited to one remedy. It would be unfair to permit the employer to pick and choose definitions from both procedures when the employee is limited to one procedure. Further, the general definition of just cause for discharge was interpreted by the arbitrator to have a particular meaning in this agreement, different than the term's meaning in the Merit Plan rules. This interpretation of the agreement must prevail when in conflict with a Merit Plan rule. *See* Article VI, Section 1.

3. The city successfully argued to the trial court that the award fashioned by the arbitrator was in excess of his authority. The city argued that the determination of the appropriate discipline is reserved to it as a management function beyond the scope of authority of the arbitrator. The arbitrator had concluded, on the other hand, that absent a specific contractual prohibition, he

had the inherent power to fashion a remedy.

 As we pointed out in *Children's Hospital v. Minnesota Nurses Ass'n,* 265 N.W.2d at 652, there are no inherent managerial rights which prevent the arbitrator's formulation of a remedy. Neither does a reading of the management rights article in this case, Article III, reveal any specific language precluding the arbitrator from fashioning certain types of remedies. Thus, the city's argument that its management rights prevent the arbitrator from fashioning a remedy must fall.

Support for the arbitrator's claim of inherent power to fashion a remedy can inferentially be found in the Steelworkers trilogy of cases written by Mr. Justice Douglas, culminating in *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1353, 4 L.Ed.2d 1424 (1960). This inference is limited, however, by subsequent language in the *Enterprise* opinion that the arbitrator must stay within the areas marked out for his consideration. *Id. See also Retail Store Employees Union Local 782 v. Sav-On Groceries,* 508 F.2d 500, 503 (10th Cir. 1975). Counsel for the union agreed at oral argument that theoretically the parties could have submitted a written issue limiting the arbitrator to the single issue of just cause for discharge and withdrawing the issue of lesser remedies from his consideration. Such a submission was not made here, however.

 We hold that the power to fashion a remedy is a necessary part of the arbitrator's jurisdiction unless withdrawn from him by specific contractual language between the parties or by a written submission of issues which precludes the fashioning of a remedy. This holding ensures that the arbitration process will function smoothly, efficiently, and without absurd results. If, for instance, the arbitrator could not fashion a remedy in a case like this one, would the employee have been able to quickly vindicate his rights, or would there have to be another arbitration to determine the appropriate discipline? If so, could the city raise a question as to jurisdiction in the second arbitration? And so on. We see no reason to restrain the arbitrator's power to fashion a reasonable remedy when the parties have failed to do so. Thus, the arbitrator's remedy should not have been vacated.

4. The city also attacks the language of the award which reduces the amount of the award by an amount equal to 60 days' pay. The award characterizes this as a suspension period. While the words may not be artful, under the facts of this case, the effect is clear. The employee was given a monetary award to be reduced because his actions merited such a reduction. The arbitrator, having jurisdiction to formulate the remedy, had jurisdiction to impose a remedy.

Reversed and remanded with instructions to reinstate the award of the arbitrator.