**COUNTY OF HENNEPIN, Respondent,**

v.

**HENNEPIN COUNTY ASSOCIATION OF PARAMEDICS AND EMERGENCY MEDICAL TECHNICIANS, Appellant.**

No. C7–90–1518.

Court of Appeals of Minnesota.

Dec. 31, 1990.

Thomas L. Johnson, Hennepin Co. Atty., Sara E. Wahl, Sr. Asst. Co. Atty., Minneapolis, for respondent.

Bruce P. Grostephan, Garber, Kaspari, Howard & Grostephan, St. Louis Park, for appellant.

Considered and decided by HUSPENI, P.J., and DAVIES, and NIERENGARTEN *, JJ.

## OPINION

HUSPENI, Judge.

Appellant challenges the trial court's order vacating on public policy grounds an arbitrator's award reinstating grievant to his position as a paramedic. Respondent in its notice of review contends that the trial court erred by finding that the arbitrator did not exceed his powers. Because we agree with respondent that the arbitrator did exceed his powers, we affirm the trial court's vacation of the arbitration award on this alternative basis.

## FACTS

Appellant Hennepin County Association of Paramedics and Emergency Medical Technicians (the Union) is the certified bargaining representative for the paramedics

---

* Wm. J. Nierengarten, retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

employed by Hennepin County Medical Center. Grievant Patrick Nelson was employed as a paramedic by respondent Hennepin County from September 26, 1986, to January 19, 1990.[1]

During employment, grievant received approximately five verbal warnings, two written warnings, and at least eleven counseling sessions in less than two years for various violations of medical protocols, the employer's policies and procedures and the employer's personnel rules. On April 22, 1988, grievant received an overall NI (needs improvement) performance appraisal rating.

Before November 1988, these warnings and counseling sessions principally involved inadequacy in run sheet documentation (i.e., insufficient, incomplete or repetitious entries), stocking and use of MAST (Military Anti–Shock) trousers,[2] and errors in judgment (i.e., while attempting to explain delay of ambulance, grievant informed patient's family and fire department that another ambulance was closer but was not dispatched).

In November 1988, respondent disciplined grievant for an incident occurring in that month in which he counseled a patient complaining of chest pain that she should be transported to the hospital by her husband. The patient had been instructed by her HMO to call 911. Protocol required transporting her to the hospital by ambulance. The arbitrator found:

> The Grievant strongly recommended and encouraged them that [patient] should be driven [to the hospital] by private automobile. * * * Based on this entire Record, this was a *clearly* incorrect judgment by the Grievant.
> *The Grievant's actions were substantially inadequate and misconduct*, because the Grievant failed to consider or even *obtain* any information from the First Responder concerning the Patient's condition. As a result, the Grievant did not correctly learn or diagnose this Patient's primary problems.

(Emphasis in original).

In December 1988, in preparation for filing a grievance under the collective bargaining agreement, grievant contacted by telephone both the first responder and the patient regarding the November incident. The arbitrator found that both the first responder and the patient told the grievant that he had performed poorly. Following the telephone conversation, grievant received the letter informing him of his suspension with intent to dismiss. The letter cited inaccurate run sheet documentation, inappropriate behavior, and poor medical judgment as the basis for the discharge.

After an administrative hearing affirming the dismissal, the parties submitted the following issues for arbitration:

> Was the Grievant discharged for just cause[3] pursuant to Article XXX DISCIPLINE of the Agreement? If not, what is appropriate discipline, if any?

The agreement does not define "just cause." Article VII, § 3 of the collective bargaining agreement provides the following limitation on the arbitrator's authority:

> The arbitrator shall not have the right to amend, modify, nullify, ignore, add to, or subtract from the provisions of this AGREEMENT. The arbitrator shall consider and decide only the specific issue(s) submitted, in writing, by the EMPLOYER and the employee-UNION, and shall have no authority to make a decision on any other issue(s) * * *. The arbitrator shall be without power to make decisions contrary to or inconsistent with or modifying or varying in any way the application of laws, rules or regulations having the force and effect of law.

The parties submitted the collective bargaining agreement and a copy of Hennepin County Ordinance 9 to the arbitrator, Edward Pribble. In addition, the arbitrator heard testimony from a number of witness-

---

**1.** Respondent notified grievant of suspension with intent to dismiss on December 27, 1989.

**2.** In one instance, grievant inflated these trousers without receiving medical authorization.

**3.** Article XXX, § 1 of the collective bargaining agreement provides that "[t]he Employer will discipline employees only for just cause."

es including Dr. Robert Long, the medical director for the paramedic squad. Dr. Long testified that the paramedics working for Hennepin County are "essentially physician extenders" and that he is "responsible for their actions." Dr. Long stated further:

It is my belief looking at his record and from certain personal knowledge that he has not been consistent in his performance as a paramedic. For that reason, I think he represents a potential risk to myself and the service and his peers.

The medical director concluded that grievant was not competent at the time of his discharge. When asked whether he was "willing to accept and abide by the decision of the arbitrator," Dr. Long indicated that he was the only individual authorized to decide whether grievant could operate as a paramedic under Dr. Long's license or be placed on medical probation.

In the opinion and award, the arbitrator reinstated the grievant to his paramedic position, ordered payment of back pay from August 14, 1989, directed the issuance of a performance review with a NI rating for two performance categories, placed grievant on medical probation for a minimum of one year, and mandated retraining in clerical and medical procedure.

After the close of the arbitration and the entry of the opinion and award, Dr. Long submitted an affidavit that stated in part:

That I cannot as Medical Director trust, have confidence or ensure that Patrick Nelson, even if on medical probation, would recognize important symptoms, conduct necessary physical examinations, make the proper assessments, accurately report these back for physician diagnosis and treatment, and appropriately carry out physician instructions or necessary medical procedures when responding to 911 requests for emergency medical services [from] Hennepin County Ambulance Services.

In addition, Dr. Long stated in a supplemental affidavit that the telephone calls were not the basis for grievant's discharge. The trial court vacated the award on public policy grounds.

## ISSUE

Did the trial court err by vacating the arbitrator's award?

## ANALYSIS

Minn.Stat. § 572.19, subd. 1(3) (1988) provides that "the court shall vacate an award where * * * the arbitrators exceeded their powers."

[I]n reviewing an arbitrator's award under § 572.19, subd. 1(3), the district court must independently determine the scope of the arbitrator's powers under the parties' agreement in de novo proceedings.

*Children's Hosp. v. Minnesota Nurses Ass'n*, 265 N.W.2d 649, 652 (Minn.1978) (citing *United States Fidelity & Guar. Co. v. Fruchtman*, 263 N.W.2d 66, 69 (Minn. 1978)). As the United States Supreme Court has stated:

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of America v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Minnesota courts have consistently held that:

an arbitrator, in the absence of any agreement limiting his authority, is the final judge of both law and fact, including the interpretation of the terms of any contract.

*State v. Berthiaume*, 259 N.W.2d 904, 910 (Minn.1977) (quoting *Cournoyer v. Am. Television & Radio Co.*, 249 Minn. 577, 580, 83 N.W.2d 409, 411 (1957)).

Respondent neither disputes that the arbitrator had authority to decide whether grievant was discharged for just cause nor that the arbitrator had the power to order that grievant be offered a job within the

Hennepin County system. Rather, respondent contends that the arbitrator exceeded the authority granted to him in the collective bargaining agreement by ordering the medical director to employ grievant as a paramedic under the medical license of the medical director and against his best medical judgment. We agree.

Ambulance services are heavily regulated. Minn.Stat. §§ 144.801–.8092 (1988) set forth the licensing requirements and minimum staffing and equipment standards for life support transport services. Hennepin County Ordinance 9, entitled Emergency Medical Services Ordinance for Hennepin County, provides in relevant part:

> The purpose of this ordinance is to establish Countywide standards to protect the *health, safety,* and the *general welfare* of the people of Hennepin County pursuant to powers granted under Minnesota Statutes 145.911–145.922, 375.51–375.55, 144.801–144.8091, and Minnesota Rules, Chapter 4690.3800.

> The general objectives include the following:

> (1) Ensure appropriate emergency medical services which provide rapid and *effective medical treatment* to persons beset by a potential or known medical emergency situation at the scene of the emergency and enroute to a medical treatment center.

> (2) Ensure that an *appropriately* equipped and *staffed* advanced life support transportation vehicle is dispatched to the scene of a suspect medical emergency requiring immediate response.

> \*　　\*　　\*　　\*　　\*　　\*

> (4) Meet consumer expectations for the *quality* and *safety* of emergency medical services provided throughout the County.

Hennepin County Ordinance No. 9, section I (Sept. 17, 1985) (emphasis added). Further, the ordinance states:

> All advanced life support transportation services shall adhere to medical protocols and procedures which have been devel-oped by the. *EMS Medical Director* in consultation with the EMS council and have been approved from time to time by the County Board.

*Id.,* section VI, sub. 5 (emphasis added).

Chapter 4690 of the Minnesota Rules establishes standards for licensing, as well as personnel staffing and quality standards, for ambulance services. Each paramedic practices pursuant to a physician's license. Minn.R. 4690.0100, subp. 24 (1989). An ambulance service must have a medical director, Minn.R. 4690.2200, subp. 2 (1989), that *"accepts responsibility for the quality of care provided* by drivers and attendants of an advanced ambulance service." Minn.R. 4690.0100, subp. 21(A) (1989) (emphasis added). The medical director sets standards for training and provision of care as well as triage, treatment and transporting protocols. *Id.* Further, before a paramedic's certificate is renewed, the medical director must sign a statement of satisfactory skill maintenance for each paramedic covering a number of areas of medical proficiency.[4] Minn.R. 4690.7200, subp. 5 and Minn.R. 4690.7400 (1989).

The statutes, rules and ordinance place substantial responsibility on the medical director for maintaining quality of care. Indeed, the rules and law impose potential tort and disciplinary liability on a medical director for the actions of unfit paramedics. *See* Minn.R. 4690.0100, subps. 21 and 24.

The statutes, rules and ordinances available to the arbitrator, together with Dr. Long's testimony at the arbitration hearing, gave the arbitrator ample notice that Dr. Long was the only individual authorized to exercise medical judgment. Indeed, Dr. Long specifically testified that grievant represented a "potential risk to [Dr. Long] and the service." When asked whether he would abide by the arbitration award, Dr. Long answered:

> With respect to discipline—not necessarily with respect to medical probation or being a paramedic—functioning paramedic within the service. That is a

---

**4.** These areas include history taking, physical examination, cardiopulmonary resuscitation, bag valve mask and tube ventilation, spinal im-mobilization, intravenous therapy, etc. *See* Minn.R. 4690.7400.

physician's responsibility that isn't directly involved in discipline. In other words I have to trust a paramedic in order to allow him to practice under my license.

The arbitrator exceeded his powers when he ordered grievant's reinstatement as a paramedic on medical probation. The reinstatement essentially forces Dr. Long to permit a person to work under his license, when he in his best medical judgment believes that person should not work as a paramedic. The arbitrator's remedy purports to dictate medical decisions legally delegated to the medical director.[5] We conclude that the remedy "was contrary to or inconsistent with * * * the application of laws, rules [and] regulations." As such, the arbitrator's award was properly vacated.[6]

Since we conclude that the award was properly vacated because the remedy fashioned exceeded the arbitrator's powers, we need not consider the public policy doctrine relied upon by the trial court as a basis for vacating the award.

## DECISION

The arbitrator exceeded his powers by reinstating grievant to his position as a paramedic and by placing him on medical probation. The trial court, accordingly, properly vacated the award.

Affirmed.

---

**5.** The arbitrator could have ordered reinstatement to the paramedic position subject to the approval of the medical director. *See Northwest Airlines v. Air Line Pilots Ass'n Int'l,* 808 F.2d 76, 83 (D.C.Cir.1987) (pilot reinstated subject to FAA approval). We recognize that on the facts of this case, the medical director would not have approved grievant's reinstatement.

**6.** In view of Hennepin County's concession at oral argument that it has a duty to offer employment to grievant within the county system and in consideration of the resolution of other issues raised in this appeal, we urge the parties to work toward settlement of any remaining issues without incurring the time and expense of a second arbitration.