STATE of Minnesota, OFFICE OF THE
STATE AUDITOR, Respondent,

v.

MINNESOTA ASSOCIATION OF
PROFESSIONAL EMPLOYEES,
Appellant.

No. C9–92–990.

Court of Appeals of Minnesota.

Dec. 15, 1992.

Review Granted Feb. 12, 1993.

Gregg M. Corwin, Karin Peterson, Gregg
M. Corwin & Associates, St. Louis Park,
for appellant.

Hubert H. Humphrey, III, Atty. Gen., Steven M. Gunn, Asst. Atty. Gen., Catherine M. Keane, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Ronald L. Rollins, Carolyn J. Trevis, Jean E. Boos, Krause & Rollins, Chartered, Minneapolis, for amicus curiae MN State Employees Union, AFSCME Council 6, AFL–CIO, Middle Management Assoc., and MN Gov. Engineer's Council.

Harley M. Ogata, Christina L. Clark, Roger L. Barrett, St. Paul, for amicus curiae MN Educ. Assoc., MN Comm. College Fac. Assoc., et al.

Considered and decided by HARTEN, P.J., and FORSBERG and SHORT, JJ.

## OPINION

FORSBERG, Judge.

### FACTS

Respondent State of Minnesota, Office of the State Auditor (the State) is responsible for auditing the accounting and budget systems of all accounts and records relating to the use of public funds by local government units in Minnesota. These audits of local government units are conducted by persons employed as Local Government Auditors. The auditors work in regional teams and spend much of their work time in the field. The grievant, Mark C. Beer (grievant), worked for the State as an auditor from July 1987 until he was discharged in April 1991.

Grievant was assigned to the Anoka crew. In January 1991, a fellow auditor from the Anoka crew requested a meeting with State Auditor-elect Mark Dayton. Grievant asked the fellow auditor if grievant could also attend this meeting, because grievant was aware the auditor intended to inform Dayton of the practice engaged in by some auditors in the Anoka crew of submitting false expense reports. Grievant and his fellow auditor told Dayton that several auditors on the Anoka crew submitted, and were reimbursed for, inflated or false expense reports. Both grievant and his fellow auditor admitted to Dayton that prior to July 1989, they had both engaged in a similar practice, but both claimed they no longer did so.

Based on this information, Dayton began an investigation. As a result, he took adverse action against five employees of the Anoka crew who had falsified expense reports, reprimanding two and discharging three. Grievant was one of those discharged, for reasons of admittedly falsifying expense reports signed under penalty of perjury, being untruthful in providing information to Dayton during the investigation, and compromising the integrity and credibility of the State.

The State and appellant Minnesota Association of Professional Employees (MAPE) are parties to a collective bargaining agreement (Agreement), which governs the terms and conditions of employment for persons who work as auditors. MAPE, on behalf of grievant, sought arbitration of his discharge. The arbitrator held a hearing and received evidence. In his decision, the arbitrator concluded there was just cause to discipline grievant, but not to discharge him. The arbitration award therefore reinstated grievant to his position.

The State moved to vacate the arbitrator's award pursuant to Minn.Stat. § 572.-19, subd. 1(3) (1990). In granting the State's motion, the district court concluded that the award either violated the public policy contained in the Agreement or explicitly conflicted with a well-defined and dominant public policy. MAPE appeals. The Minnesota Education Association, et al., and AFSCME Council No. 6, et al. have filed amicus curiae briefs in support of MAPE's appeal.

### ISSUE

Did the district court err by vacating the arbitrator's award on the grounds the award either (1) violates the public policy contained in the Agreement or (2) conflicts with a well-defined and dominant public policy?

### ANALYSIS

■ Arbitration is a proceeding favored in law. *Ehlert v. Western Nat'l Mut. Ins.*

Co., 296 Minn. 195, 199, 207 N.W.2d 334, 336 (1973). The primary intent of arbitration is to encourage voluntary resolution of disputes in a forum created and controlled by the parties in their written agreement, and to discourage litigation. *Eric A. Carlstrom Constr. Co. v. Independent Sch. Dist. No. 77*, 256 N.W.2d 479, 483 (Minn. 1977).

■ A reviewing court is limited to determining whether the specific language contained in an agreement precludes the award made by the arbitrator. *City of Bloomington v. Local 2828*, 290 N.W.2d 598, 602 (Minn.1980). The " 'court must independently determine the scope of the arbitrator's powers under the parties' agreement in de novo proceedings' " when reviewing an arbitrator's award pursuant to Minn.Stat. § 572.19, subd. 1(3). *County of Hennepin v. Hennepin County Ass'n of Paramedics*, 464 N.W.2d 578, 580 (Minn. App.1990) (quoting *Children's Hosp., Inc. v. Minnesota Nurses Ass'n*, 265 N.W.2d 649, 652 (Minn.1978)).

### I. Minn.Stat. § 572.19, subd. 1(3).

■ "[I]n the absence of any agreement limiting his authority, [the arbitrator] is the final judge of both law and fact, including the interpretation of the terms of any contract." *Cournoyer v. American Television & Radio Co.*, 249 Minn. 577, 580, 83 N.W.2d 409, 411 (1957), *quoted by State v. Berthiaume*, 259 N.W.2d 904, 910 (Minn. 1977). The State argues the Agreement implicitly includes public policy, and therefore the award exceeded the scope of the arbitrator's powers.

The Agreement provides that discipline, including discharge, shall be imposed on an employee only for "just cause" and that discipline shall be corrective where appropriate. The Agreement does not define just cause. While the State could have sought to include in the Agreement those public policy concerns that it now urges are implicitly present, it did not do so. "By failing to specifically define what acts constitute just cause for discharge, * * * the parties left this decision for the arbitrator."

*City of Bloomington v. Local 2828*, 290 N.W.2d 598, 602 (Minn.1980).

■ The Agreement further provides the following limits on an arbitrator's powers:

> The Arbitrator shall be without power to make decisions contrary to or inconsistent with or modifying or varying in any way the application of laws, rules, or regulations having the force and effect of law.

We do not believe this clause may be read to limit the arbitrator's powers so as to require him to discharge grievant on public policy grounds. This is a standard clause in collective bargaining agreements. *See, e.g., City of Bloomington*, 290 N.W.2d at 601; *Berthiaume*, 259 N.W.2d at 908 n. 4; *County of Hennepin*, 464 N.W.2d at 579. It merely means the arbitrator's award must not call for the commission of an illegal act. The award in this case is clearly not illegal within the meaning of this clause.

Accordingly, whether public policy could be implied into the terms of the Agreement was a decision reserved to the arbitrator. The district court therefore erred in vacating the award on the basis the arbitrator exceeded his powers under Minn.Stat. § 572.19, subd. 1(3). *See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (reviewing "court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one").

### II. Public Policy Exception.

■ The State claims even if the award is valid under Minn.Stat. § 572.19, subd. 1(3), the court may not enforce it because it violates public policy. The United States Supreme Court has recognized a narrow public policy exception which permits the vacation of arbitration awards even when the award is otherwise within the powers of the arbitrator. *See W.R. Grace*, 461 U.S. at 766, 103 S.Ct. at 2183. While two of our cases have discussed the public policy exception, neither has expressly adopted it. *See County of Hennepin v. Hennepin County Ass'n of Paramedics*, 464 N.W.2d

578, 582 (Minn.App.1990); *Medcenters Health Care, Inc. v. Park Nicollet Med. Ctr.*, 430 N.W.2d 668, 673 (Minn.App.1988), *pet. for rev. denied* (Minn. Apr. 26, 1989).

■ For several reasons, we similarly refuse to adopt a public policy exception. Good labor relations involve a delicate balancing of the powers of management with that of labor. Allowing a public policy exception would overwhelmingly tip the balance of power toward management because the exception would be available to employers in virtually every case where an arbitrator found just cause to discipline but not just cause to discharge. In addition, the exception would interfere with the finality of arbitration by giving the judiciary the opportunity to second-guess an arbitrator's decision. Whether arbitration is available by agreement or compelled in exchange for the relinquishment of the right to strike, it should not be undermined by a vague exception. Unless the labor arbitration system is preserved, we will be in the same chaotic and disorderly situation which existed before it was conceived.

Even if Minnesota were to recognize the public policy exception, we do not believe its application requires vacation of the arbitration award in this case. In order to invoke the exception, the public policy

> must be well-defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests."

*W.R. Grace*, 461 U.S. at 766, 103 S.Ct. at 2183 (quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)). In order to overturn an arbitrator's decision, the court must find that the award is in direct conflict with these well-defined and dominant public policies. *See United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987).

In its brief on appeal, the State cites to a number of provisions in the Minnesota Constitution, Minnesota Statutes, and Minnesota Rules of Civil Procedure, which it argues

establish three well-defined and dominant public policies. Those policies include the requirement that public funds be expended only for a public purpose, that honesty and integrity is required of government employees and officials, and that honesty and integrity is required of certified public accountants.[1]

However, we need not decide whether these policies are well-defined and dominant because the inquiry does not focus on grievant's underlying conduct, but on whether the award reinstating grievant violates these policies. While an employee's conduct may be against public policy, it does not necessarily follow that an arbitration award reinstating the employee violates public policy.

To this extent, the State's own personnel actions undeniably establish that the decision to reinstate grievant did not violate any public policy. Although Dayton (and the arbitrator) found a total of six employees had submitted false expense reports, only three of these employees were discharged. Of the remaining three, two were reprimanded and one was actually commended (for stopping his practice of submitting false reports, trying to get others to stop, and informing Dayton of the practice).

These personnel actions illustrate the fact-finding nature of fashioning a remedy, whether it be discharge or discipline with or without back pay or suspension. Such decisions are clearly within the exclusive province of the arbitrator, and should not be subject to judicial scrutiny. Since the remedy fashioned by the arbitrator does not violate any well-defined and dominant public policy, the district court erred in examining the merits of the case and engaging in fact-finding. *See City of Bloomington*, 290 N.W.2d at 603.

Because we conclude that the arbitrator's award is not in direct conflict with any public policy, we need not discuss the State's claim that the district court should have considered the affidavit of Mark Dayton.

---

1. Grievant is a certified public accountant.

## DECISION

Since the arbitrator must interpret whether the terms in the Agreement include public policy, the arbitrator did not exceed his power under Minn.Stat. § 572.19, subd. 1(3). No public policy cited by the State is violated by the arbitration award reinstating grievant. The district court erred in vacating the arbitrator's award.

Reversed.

SHORT, Judge (dissenting).

I respectfully dissent with regard to the part of this court's opinion involving the public policy exception. Minnesota should recognize the public policy exception and expressly adopt the principle that some matters of public policy require vacating an arbitration award, even though the arbitrated issues are within the arbitrator's authority to determine. *See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) ("the question of public policy is ultimately one for resolution by the courts"); *cf. Medcenters Health Care, Inc. v. Park Nicollet Med. Ctr.*, 430 N.W.2d 668, 673 (Minn.App. 1988) (declining to apply *W.R. Grace* analysis), *pet. for rev. denied* (Minn. Apr. 26, 1989). In several other jurisdictions, it is a "generally established principle" that an arbitration award should be vacated when the award compels conduct contrary to accepted public policy. *See, e.g., In re Standard Coffee Service Co.*, 499 So.2d 1314, 1316 (La.App.1986) (public policy exception exists despite lack of statutory provision for vacating an award that is contrary to public policy), *writ denied by* 501 So.2d 232 (La.1987); *Village of Turtle Lake v. Orvedahl Const., Inc.*, 135 Wis.2d 385, 400 N.W.2d 475, 478 (1986) (arbitrator's decision will be overturned if it violates the law or strong public policy; arbitrator's decision "must uphold the strong public policy of avoiding the possibility of fraud, favoritism, collusion, or improvidence").

There are good reasons why we should adopt the public policy exception. A court's refusal to enforce an arbitrator's award on public policy grounds is but an application of the general common-law principle that a court may decline to enforce contracts that violate law or public policy. Courts decline to enforce such contracts because of a reluctance to aid a party that bases a cause of action upon an immoral or illegal act. *City of De Kalb v. Local 1236*, 182 Ill.App.3d 367, 131 Ill.Dec. 492, 495, 538 N.E.2d 867, 870 (1989), *appeal denied by* 127 Ill.2d 614, 136 Ill.Dec. 582, 545 N.E.2d 106 (1989). Indeed, when an arbitrator's interpretation of an agreement is in clear contravention of the public policy of the State of Minnesota, our affirmance of the arbitrator's award is akin to the enforcement of a void contract. *Standard Coffee Service Co.*, 499 So.2d at 1316. The majority correctly notes the importance of not undermining the availability of arbitration, but this goal may be balanced with other important public policy goals. *Cf. AFSCME v. State*, 124 Ill.2d 246, 124 Ill. Dec. 553, 560, 529 N.E.2d 534, 541 (1988) (balancing public policy of promoting constructive relationships between public employers and public employees and the public policy requiring finality in arbitration awards on the one hand with goal of compassionate care for the mentally disabled on the other).

Applying the public policy exception to the present case, the state has met its burden of proving the arbitrator's award violates Minnesota's public policy against embezzling state property. *Cf. City of New Haven v. AFSCME, Council 15*, 208 Conn. 411, 544 A.2d 186, 190 (1988) (burden on party challenging arbitral authority). As we noted in *Medcenters*, an analysis under the public policy exception requires a two-part inquiry. *Medcenters*, 430 N.W.2d at 673. First, is there a well defined and dominant public policy? *Id.; see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 367, 98 L.Ed.2d 286 (1987) (court's refusal to enforce arbitrator's interpretation of contracts limited to situations where contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and not from general considerations of supposed public interests).

Minnesota's public policy against embezzling state property is well defined and dominant, and it is ascertained by reference to specific laws and not from a general consideration of supposed public interests. *See* Minn. Const. arts. V, § 6 (state officers sworn to discharge faithfully the duties of their office to the best of their judgment and ability), XI, § 13 (officers charged with the safekeeping of state funds required to give ample security for them and to keep accurate entries of each sum received); Minn.Stat. §§ 6.01 (duties of state auditor), .53 (penalty for refusal to assist state auditor), 43A.38, subd. 4 (1990) (employee shall not use state property for his or her private interests).

Second, has a violation of that public policy occurred? *Medcenters*, 430 N.W.2d at 673. In this case, the grievant submitted inflated and false expense reports that he had signed under penalty of perjury. He was untruthful in providing information to the state auditor during his investigation, and compromised the state's credibility and integrity. Grievant, as a local government auditor, was charged with assisting the state auditor in his statutory duties of superintending and managing the state's fiscal concerns, yet his own dishonest actions created an explicit conflict with these duties. Under these circumstances, the arbitrator's reinstatement of the grievant violates public policy and must be reversed.