In the Matter of the Arbitration between
the CITY OF SAINT PAUL,
petitioner, Respondent,

v.

AFSCME COUNCIL 14, LOCAL
2508, et al., Appellants.

No. C7–97–134.

Court of Appeals of Minnesota.

July 31, 1997.

Peg Birk, Saint Paul City Attorney, John B. McCormick, Deputy City Attorney, St. Paul, for respondent.

Gregg M. Corwin, Karin E. Peterson, Gregg M. Corwin & Associates, St. Louis Park, for appellants.

Considered and decided by KALITOWSKI, P.J., and RANDALL and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellants AFSCME Council 14, Local 2508, and Local 1852 (AFSCME) challenge the district court's order vacating an arbitration award in which the arbitrator concluded that AFSCME may not, pursuant to city ordinance, impose a residency requirement. We reverse.

## FACTS

AFSCME serves as the exclusive representative of certain classified employees of respondent City of Saint Paul (the City). Pursuant to Minnesota's Public Employment Labor Relations Act (PELRA), Minn.Stat. §§ 179A.01–.30 (1996), AFSCME and the City are parties to a collective bargaining agreement (CBA) that governs, in part, the terms and conditions of employment with the City for AFSCME members.

Prior to 1979, the City required AFSCME members working for the City to be residents of the City of St. Paul. In 1979, the City, by resolution, lifted the residency requirement. The new resolution required that classified employees need only be residents of the State of Minnesota. Every CBA between the parties since 1980–81 has incorporated the 1979 state residency language by reference.

In 1994, the Minnesota Legislature enacted 1994 Minn. Laws, ch. 570, § 1. This section allowed the City to enact, by ordinance, a residency requirement for all employees and provided:

Notwithstanding Minnesota Statutes, section 415.16 or any other statute or home rule charter provision, the city of St. Paul may by ordinance require that a person be a resident of the city as a condition of employment by the city. The residency requirement may be applied by the city only to persons hired by the city after the effective date of the ordinance.

1994 Minn. Laws ch. 570, § 1.

The St. Paul City Council enacted Chapter 27 of the St. Paul Administrative Code, effective September 28, 1994, and applicable to persons hired after that date. The ordinance provides, in part, that if an individual employed in an entry level classified position elects to receive 10 bonus points on his or her civil service examination, the individual must become a resident of St. Paul within six months of the end of the probationary period and must remain a resident as a continuing condition of employment. St. Paul, Minn., Admin. Code § 27.03 (1994).

After the effective date of the residency ordinance, the parties entered into negotiations for a new CBA for the 1995–96 year.[1] During the negotiations, the City attempted to insert the new city residency requirement into the CBA. AFSCME, on the other hand, insisted on including the 1979 state-residency requirement. Ultimately, the 1995–96 CBA

---

1. The City actually entered into two collective bargaining agreements, one with AFSCME Council 14, Local 2508 and the other with Local 1842.

For simplicity and the purposes of this opinion, the two agreements will be referred to as one CBA.

incorporated the 1979 residency language in its entirety. On September 13, 1995, the St. Paul City Council ratified, by resolution, the CBA with AFSCME.

After the CBA was adopted, the City sought to impose the residency requirement on those entry level classified employees who elected to receive 10 extra points on their civil service test scores. AFSCME filed a grievance, claiming a "conflict" between the ordinance and the CBA. The matter proceeded to arbitration. The issue of arbitrability was not contested and the parties stipulated that the issue to be decided by the arbitrator was:

> Does the City of St. Paul's application of a residency requirement for some employees represented by the Union violate the Collective Bargaining Agreement?

The arbitrator issued an award, sustaining AFSCME's grievance. The arbitrator concluded that, given the history of the negotiating process, incorporation of the 1979 state residency language into the 1995–96 CBA was "an explicit * * * prohibition on requiring [AFSCME] employees from having to maintain residency in the city in order to remain employed."

The City filed an application in Ramsey County District Court to vacate the arbitrator's award pursuant to Minn.Stat. § 572.19, subd. 1(3) (1996). The district court vacated the award, ruling that the arbitrator exceeded his authority under the CBA and that his decision did not derive its essence from the contract. The district court ruled that the parties bargained that the CBA would be subject to the laws of the City of St. Paul and the arbitrator's decision was contrary to and inconsistent with the City ordinance requiring city residency for some employees. The district court held that the arbitrator failed to give effect to Minn.Stat. § 179A.20, subd. 2 (1996), and §§ 30.3 and 6.5 of the CBA, thereby "vitiating" ordinance 27.03.

## ISSUE

Did the district court err in vacating the arbitrator's award pursuant to Minn.Stat. § 572.19, subd. 1(3)?

## ANALYSIS

When reviewing challenges to the scope of an arbitrator's power pursuant to Minn.Stat. § 572.19, subd. 1(3) (1996), this court's review is limited. *State, Office of the State Auditor v. Minnesota Ass'n of Prof'l Employees,* 504 N.W.2d 751, 755 (Minn.1993).

> [A]n arbitrator, in the absence of an agreement limiting his authority, is the final judge of both law and fact, including the interpretation of the terms of any contract, and his award will not be reviewed or set aside for mistake of either law or fact in the absence of fraud, mistake in applying his own theory, misconduct, or other disregard of duty.

*Cournoyer v. American Tel. & Radio Co.,* 249 Minn. 577, 580, 83 N.W.2d 409, 411 (1957). The role of the reviewing court is "solely to determine whether specific language in the [CBA] or submission precludes the arbitrator from deciding the case as he did." *City of Bloomington v. Local 2828, AFSCME,* 290 N.W.2d 598, 602 (Minn.1980). Only where it is clearly established that the arbitrator exceeded his or her authority must a court vacate an award. *National Indem. Co. v. Farm Bureau Mut. Ins. Co.,* 348 N.W.2d 748, 750 (Minn.1984).

1. In the present case, the question of arbitrability is not at issue. The parties agreed to submit the dispute to arbitration and arbitrability was not contested at the arbitration hearing. Once arbitrability is established, the only issue before the reviewing court is whether the arbitrator's decision draws its "essence" from the parties' CBA and does not manifest the arbitrator's personal notion of justice. *Ramsey County v. AFSCME, Council 91, Local 8,* 309 N.W.2d 785, 790 (Minn.1981). An arbitration award draws its "essence" from the CBA if it is rationally derived from the CBA viewed in light of the CBA's language, context, and other indicia of the parties' intent, including past practice. *Id.* at 790–91.

Here, the parties, through the terms of the CBA and their submission, gave the arbitrator broad authority to interpret the CBA. The arbitrator found that, after unsuccessfully attempting to incorporate the lan-

guage of ordinance 27.03 into the CBA, the City had agreed to include the 1979 state-only residency requirement instead of the city residency language contained in ordinance 27.03. The arbitrator concluded:

> It should be clear, however, the Arbitrator makes no finding over the portion of the ordinance as it relates to preference points for non-employee residents. The City could give bonus points to prospective bargaining unit employees who live in the blue houses on the odd side of the street. This is * * * no concern of the Arbitrator's or the Union's. However, once hired and past probation, an employee of the bargaining unit cannot, under this contract, have his or her employment conditioned on residency within the City. The only residency requirement contractually enforceable is to be a resident of the State.

Whether we agree with the correctness of the arbitrator's decision on the merits, the parties bargained for his interpretation of the CBA, and we may not interfere with that interpretation of the arbitrator's final decision. *See State Auditor*, 504 N.W.2d at 755 (holding that " 'courts will not overturn an award merely because they may disagree with the arbitrator's decision on the merits' ") (citation omitted). It is immaterial whether the arbitrator erred in his interpretation of the CBA or the applicable law. *See id.* at 754 (holding that an arbitrator's decision will not be reviewed or set aside for mistake of either law or fact). The parties specifically granted the arbitrator the authority to interpret the language and provisions of the CBA. The arbitrator interpreted the parties' CBA and the parties are bound by that decision.

We reverse the district court's vacation of the arbitrator's decision.

2. The City argues that the arbitrator's award is contrary to public policy because it calls for the commission of an illegal act by the City. In limited circumstances, a "public policy exception" may provide a basis for courts to vacate an arbitration award. *Id.* at 756 (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)). An arbitration award may be set aside on public policy grounds only if: (1) the collective bargaining agreement contains terms that violate public policy or (2) the arbitration award creates an explicit conflict with other laws and legal precedents. *State Auditor*, 504 N.W.2d at 756.

Here, the City does not contend that the CBA contains terms that violate public policy. The question is whether the arbitration award, if enforced, would violate any well-defined and dominant public policy. We conclude that it does not.

Contrary to the City's assertions, enforcement of the arbitrator's award will not compel any illegal act. Nothing in the language of ordinance 27.03 prevents the City from employing individuals who are not residents of the City of St. Paul. Thus, because the City may, if it chooses, employ individuals who are not residents of the City, the arbitrator's decision, if enforced, does not compel the commission of an illegal act by the City. Accordingly, we decline to vacate the arbitrator's decision on the ground that it violates public policy.

We wish to make it clear that we do not decide this case on the merits, as the dissent advocates, but solely on the basis that the arbitrator did not exceed his powers as an arbitrator and only decided the question as submitted to him by the parties, as he is entitled to do. After lengthy negotiations, the parties chose to exclude the ordinance provision that required city residency from the CBA and instead agreed to the 1979 state residence requirement only. Under these circumstances, we conclude the City must abide by the arbitrator's decision.

## DECISION

The district court erred in ruling that the arbitrator exceeded his powers and in vacating the arbitrator's award. The arbitrators interpretation of the 1995–96 CBA does not violate public policy.

**Reversed.**

RANDALL, Judge, dissenting.

I respectfully dissent. Ordinance § 27.03 does not require city residency as a condition of employment. Rather, it gives new employees a choice to receive an additional 10 points on their civil service examination if they agree to become city residents within the six months after coming off their probationary period. The choice is theirs. It is neither mandated nor are they penalized for not becoming city residents. They simply then take the test and it gets scored like everyone else.

As the majority correctly notes, prior to 1979, the City had a residency requirement that affected AFSCME members. In 1979, the City, by resolution, lifted the residency requirement. The resolution required that classified employees were required only to be residents of the State of Minnesota. Every CBA between the parties since 1980–81 has incorporated by reference the 1979 residency language. This reference language is as follows:

> The resolution pertaining to residence approved July 26, 1979, under Council File No. 27378 shall apply to all employees covered by this agreement.

In 1994, the Minnesota Legislature enacted 1994 Minn. Laws, ch. 570. This section allowed the City to enact, by ordinance, a residency requirement for all employees and provided:

> Notwithstanding Minnesota Statutes, section 415.16 or any other statute or home rule charter provision, the city of St. Paul may by ordinance require that a person be a resident of the city as a condition of employment by the city. The residency requirement may be applied by the city only to persons hired by the city after the effective date of the ordinance.

1994 Minn. Laws ch. 570 § 1.

1994 Minn. Laws ch. 570 is enabling legislation. It allows the City of St. Paul, by ordinance, to establish a residency requirement for individuals employed by the city.

Pursuant to this enabling legislation, the City enacted ordinance § 27.03, which provides that applicants for original entry to a position in the classified service of the City of St. Paul may obtain an additional 10 points on his or her civil service test score if the applicant becomes a resident of the City of St. Paul within six months after of the end of his or her probationary period.

As the district court correctly noted, ordinance § 27.03 does not impose a per se residency requirement for new employees of the City of St. Paul. Respondent concedes that the city does hire and employ individuals who do not live in the City of St. Paul. The ordinance simply offers the benefit of 10 additional test points for those applicants who agree to become residents of the City of St. Paul.[2] An individual may still obtain employment in a classified position with the city even if he or she does not reside within the city limits. The only difference is that the individual would not receive the additional 10 bonus points.

I suggest that Minn.Stat. § 179A.16, subd. 5, is dispositive of the issue. This section details the jurisdiction of the arbitrator under PELRA, and provides, in part, that:

> A decision which violates, is in conflict with, or causes a penalty to be incurred under: (1) the laws of Minnesota; or (2) rules promulgated under law, or municipal charters, *ordinances*, or resolutions, provided that the rules, charters, ordinances, and resolutions are consistent with this chapter, has no force or effect and shall be returned to the arbitrator * * * to make it consistent with the laws, rules, charters, ordinances, or resolutions.

Minn.Stat. § 179A.16, subd. 5 (emphasis added).

Here, enforcement of the arbitration award would call for the commission of an illegal act by the city. If allowed to stand, the arbitration award would require the City to employ, and continue to employ, individuals who opted for the additional 10 points on their civil service test score but who do not

---

2. The 1979 residency requirement contains language similar to ordinance § 27.03. The language provides that an applicant to an original entry position in the classified service of the City of St. Paul was eligible to receive an additional 5 points on his or her civil service test if the applicant had been a resident of the city at least one year prior to the date of the examination.

become residents of the City of St. Paul within six months after coming off their probationary period. This is in violation of ordinance § 27.03 and therefore is prohibited by Minn.Stat. § 179A.16, subd. 5.

I note that Article 6, § 6.5 and Article 30, § 30.2 of the parties' CBA explicitly states that the CBA is subject to the laws of the State of Minnesota and the City of St. Paul and that the arbitrator shall not make a decision contrary to law. This prohibits the arbitrator from rendering a decision in violation of a city ordinance.

The ordinance and Article 8 of the CBA are not inherently inconsistent nor mutually exclusive. An applicant for employment with the city, whether he or she opts for the additional 10 bonus points, must still be a resident of the State of Minnesota. The city residency requirement contained in the ordinance applies only when the *applicant chooses* to receive the additional 10 bonus points.

I would affirm the district court's decision to vacate the arbitrator's award. The arbitrator exceeded his authority under the parties' CBA and state statutes. Further, nothing was forced on appellants' members. The members, not the city, controlled the option of wanting the extra ten points to enhance their chances of employment in a highly competitive market. Good judgment tells us that it can hardly be argued that a city employee who voluntarily solicits extra points on a civil service exam should not be asked to do what they agreed to do, namely comply with the modest residency requirement. The employees at all times are protected by the CBA to the extent that they can live anywhere in the State of Minnesota. Here, appellants are, in effect, interfering with the prospective employees' freedom of choice. The prospective employee who wishes to gain voluntarily the additional ten points on the civil service exam by agreeing to a residency requirement will be prevented from doing so by their own union, which is supposed to look out for their best interests. It is axiomatic that if the city cannot ask the new employees to live up to the residency requirement that the new employees agreed to, the option open to employees who want those ten points will be seriously impaired and/or disappear completely.